UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIANNE TAITANO and ROBERT TAITANO,<br><br>Plaintiffs,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>Defendant. | Case No.18-cv-03924-NC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. No. 23 |

Before the Court is defendant Wells Fargo Bank, N.A.'s motion to dismiss plaintiffs Marianne and Robert Taitano's first amended complaint. *See* Dkt. No. 23. Because Plaintiffs fail to allege key elements of their dual-tracking and single point of contact claims, the Court GRANTS Wells Fargo's motion to dismiss with leave to amend.

**I.   Allegations in the Complaint and Procedural History**

In August 2007, Plaintiffs refinanced their home mortgage in San Jose, California with Wells Fargo. *See* Dkt. No. 23 ("FAC") ¶¶ 4, 5, 10. On June 26, 2017, Wells Fargo recorded a notice of default. *See* Dkt. No. 24-1, Ex. G.[1]

---

[1] Wells Fargo request judicial notice of three documents recorded with the Santa Clara County Recorder's Office and five documents reflecting executive actions by the government of the United States and State of California. *See* Dkt. No. 24. Because Wells Fargo's request for judicial notice is uncontested and all noticed documents are matters of public record, the Court GRANTS Wells Fargo's request for judicial notice. *See Lee v. City of Los Angeles*, 240 F.3d 754, 774 (9th Cir. 2001) (citing Fed. R. Evid. 201).

On August 16, 2017, a Wells Fargo representative reached out to Plaintiffs and invited them to apply for a loan modification, reinstatement, repayment plan, or forbearance plan. *Id.* ¶ 17. On August 31, 2017, the Wells Fargo representative in charge of Plaintiffs' account, Zachary LaFleur, reached out to Plaintiffs to discuss possible loss mitigation and mortgage review options. *Id.* ¶¶ 18–19. In response, Plaintiffs applied for a foreclosure prevention alternative from Wells Fargo in early September 2017. *Id.* ¶¶ 20, 21. Plaintiffs also supplied supporting documentation, showing that their combined income had increased from $3,449 per month to $6,970 per month. *Id.* ¶ 21. LaFleur confirmed receipt of Plaintiffs' application on September 13, 2017. *Id.* ¶ 22.

On September 21, 2017, Wells Fargo directed its foreclosure trustee, NBS Default Services, LLC ("NBS"), to commence foreclosure proceedings against Plaintiffs' property. *Id.* ¶ 23. NBS recorded a Notice of Trustee's Sale for Plaintiffs' property, which scheduled the foreclosure sale for October 26, 2017. *Id.* ¶¶ 23, 24.

After receiving the Notice, Plaintiffs contacted Wells Fargo and were advised to submit an updated Mortgage Assistance Application. *Id.* ¶¶ 25, 26. On October 24, 2017, Plaintiffs submitted an updated application, indicating that their monthly income had increased to $8,100. *Id.* ¶ 26.

On November 1, 2017, Plaintiffs contacted Wells Fargo to speak with LaFleur, but were unable to reach him. *Id.* ¶ 27. Instead, Plaintiffs spoke with two other Wells Fargo representatives who confirmed receipt of Plaintiffs' updated application and requested additional documentation for review. *Id.* Plaintiffs tried again to speak with LaFleur on November 3, 2017, but were again unsuccessful. *Id.* ¶ 28. On November 6, 2017, Plaintiffs faxed the requested documents to Wells Fargo. *Id.* ¶ 29. The next day, Wells Fargo informed Plaintiffs that it would not move forward with the ongoing review. *Id.* ¶ 30. However, on November 22, 2017, Wells Fargo informed Plaintiffs that their application was complete. *Id.* ¶ 31.

On November 28, 2017, Wells Fargo formally denied Plaintiffs a loan modification based on a negative net present value ("NPV"), claiming that Plaintiffs showed $6,970 in

1 gross monthly income and a home value of $810,000. *Id.* ¶ 32. Wells Fargo also indicated that it reviewed Plaintiffs for "Other assistance options" including the short sale program and proprietary fixed-rate modification program. *Id.* ¶ 33. Plaintiffs allege that Wells Fargo failed to consider them for other assistance options, such as a repayment plan or forbearance plan. *Id.* Plaintiffs' property was scheduled to sell at foreclosure on June 22, 2018. *Id.* ¶ 34.

On June 29, 2018, Plaintiffs filed their first amended complaint against Wells Fargo alleging claims for (1) violation of the California Homeowner Bill of Rights ("HBOR") Cal. Civ. Code § 2923.6/2924.11(a); (2) violation of Cal. Civ. Code § 2923.7(b)(5); (3) violation of Cal. Civ. Code § 2923.7(b)(4); (4) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; and (5) breach of the implied covenant of good faith and fair dealing. *See* Dkt. No. 13. Wells Fargo now moves to dismiss Plaintiffs' first amended complaint. *See* Dkt. No. 23. All parties have consented to the jurisdiction of a magistrate judge. *See* Dkt. Nos. 5, 11.

## II. Legal Standard

A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the

3

pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000); *see also* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

## III. Discussion

### A. Cal. Civ. Code § 2923.6/2924.11

Plaintiffs allege that Wells Fargo violated the HBOR by dual-tracking their mortgage in violation of Cal. Civ. Code § 2923.6/2924.11.

As a threshold matter, Wells Fargo argues that Plaintiffs' dual-tracking claim was extinguished by the repeal of § 2923.6. The HBOR contained an automatic sunset provision that repealed the original statute and replaced it with new provisions on January 1, 2018. *See Haynish v. Bank of Am., N.A.*, No. 17-cv-01011-HRL, 2018 WL 2445516, at *3 (N.D. Cal. May 31, 2018). Under the original HBOR statute, Cal. Civ. Code § 2923.6 prohibited dual-tracking as follows:

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

Cal. Civ. Code § 2923.6(c) (2017). On January 1, 2018, § 2923.6 was repealed and its dual-tracking ban was reshuffled to § 2924.11, which provides:

> If a borrower submits a complete application for a foreclosure prevention alternative offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale while the complete foreclosure prevention alternative application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested foreclosure prevention alternative.

4

Cal. Civ. Code § 2924.11(a) (2018).

Under California law, "when a pending action rests solely on a statutory basis, and when no rights have vested under the statute, a repeal of such a statute without a saving clause will terminate all pending actions based thereon." *Governing Bd. v. Mann*, 18 Cal. 3d 819, 829 (1977) (internal quotation marks omitted); *see also Beverly Hilton Hotel v. Workers' Comp. Appeals Bd.*, 176 Cal. App. 4th 1597, 1604 (2009) ("If final relief has not been granted before the repeal goes into effect it cannot be granted afterwards, even if a judgment has been entered and the cause is pending on appeal.").

A "saving clause" need not be explicit; rights under a former statute may be saved "if the [legislature's] intention to preserve and continue such rights is otherwise clearly apparent." *Bourquez v. Super. Ct.*, 156 Cal. App. 4th 1275, 1284 (2007) (quoting *Traub v. Edwards*, 38 Cal. App. 2d 719, 721 (1984)). "Thus, if it can be gathered from any act on the same subject passed by the [L]egislature at the same session that it was the legislative intent that pending proceedings should be saved, it will be sufficient to effect that purpose." *Id.* (alterations in original).

As relevant here, other courts have held that the 2018 repeal-and-replace of the HBOR extinguished certain types of dual-tracking claims under § 2923.6. In *Jacobik v. Wells Fargo Bank, N.A.*, No. 17-cv-05121-LB, 2018 WL 1184812, at *6 (N.D. Cal. Mar. 7, 2018), for example, the district court held that the homeowners' dual-tracking claim based on the bank's failure to provide specific NPV values used to deny their loan modification application was extinguished by the repeal. Similarly, in *Haynish*, the district court concluded that 2018 repeal extinguished claims based on the original version of § 2923.6(g), which permitted successive loan modification applications if the homeowners provided evidence of a material change in their financial circumstances. *Haynish*, 2018 WL 2445516, at *5–6.

Other courts, however, have concluded that certain dual-tracking claims under § 2923.6 *have* been saved. Of note, the Ninth Circuit held in an unpublished opinion that the general prohibition on dual-tracking was preserved by the 2018 repeal. *Travis v.*

5

*Nationstar Mortg., LLC*, 733 Fed. Appx. 371, 373 (2018) ("Former section 2923.6 was reenacted with somewhat different language as section 2924.11, but section 2924.11 still protects the same rights the Homeowners seek to enforce here.").

Here, Plaintiffs allege that Wells Fargo engaged in unlawful dual-tracking by recording a Notice of Trustee's Sale on September 21, 2017, even though Plaintiffs had pending foreclosure prevention applications. *See* FAC ¶¶ 23, 31. This claim seeks to enforce the general prohibition on dual-tracking, not any specific rights or procedures only present in the pre-2018 HBOR. Thus, Plaintiffs' § 2923.6 claim has been saved.

However, Wells Fargo also argues that Plaintiffs' allegations are insufficient to plausibly infer that they submitted a completed application. Wells Fargo argues that Plaintiffs' allegations are conclusory and insufficient to state a claim. The Court agrees.

Sections 2923.6(h) and 2924.11(f) state that "an application shall be deemed 'complete' when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer." Cal. Civ. Code § 2923.6(h) (2017); *see also* Cal. Civ. Code § 2924.11(f) (2018). Plaintiffs only allege that they have submitted "all financial documentation and information which included all of the documentation that Defendant requested from Plaintiffs." FAC ¶ 20. This allegation merely repeats the statutory definition of "complete" and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Cornejo v. Ocwen Loan Servicing, LLC*, 151 F. Supp. 3d 1102, 1111 (E.D. Cal. 2015) (conclusory allegations of completeness insufficient); *Gilmore v. Wells Fargo Bank, N.A.*, 75 F. Supp. 3d 1255, 1263 (N.D. Cal. 2014) (plausibly alleged a complete application by alleging that documents were provided in accordance with a checklist given by defendant).

Accordingly, the Court GRANTS Wells Fargo's motion to dismiss Plaintiffs' first claim with leave to amend. If Plaintiffs amend their complaint, they must clearly allege what documents were requested by Wells Fargo as part of the foreclosure prevention application process and what documents they provided.

## B. Cal. Civ. Code §§ 2923.7(b)(4), (5)

In addition to the ban on dual-tracking, the HBOR also requires mortgage servicers to provide a single point of contact to borrowers requesting a foreclosure prevention alternative. *See* Cal. Civ. Code § 2923.7. Specifically, § 2923.7 provides that:

> Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

Cal. Civ. Code § 2923.7(a). A "single point of contact" is "an individual or team of personnel each of whom has" certain responsibilities. Cal. Civ. Code § 2923.7(e). As relevant here, those responsibilities include:

> (4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any [and]
>
> (5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

Cal. Civ. Code §§ 2923.7(b)(4), (5).

Courts have split over their interpretation of the introductory phrase in § 2923.7(a). Some courts read "[u]pon request from a borrower" as requiring plaintiffs to affirmatively request a single point of contact to state a claim. *See, e.g.*, *Galvez v. Wells Fargo Bank, N.A.*, No. 17-cv-06993-JSC, 2018 WL 4849676, at *6 (N.D. Cal. Oc. 4, 2018) (requirements of § 2923.7 only apply when borrowers request a single point of contact); *Dare v. Aegis Wholesale Corp.*, No. 15-cv-02833-JAH, 2017 WL 1135587, at *7 (S.D. Cal. Mar. 27, 2017) (same); *Mobley v. Wilmington Trust*, No. 15-cv-4201-PA, 2016 WL 7234099, at *3 (C.D. Cal. Sept. 9, 2016) (same); *Conroy v. Wells Fargo Bank, N.A.*, 13 Cal. App. 5th 1012, 1034–37 (2017) (depublished) (same). Other courts read § 2923.7(a) more expansively. *See e.g.*, *Travis*, 733 Fed. Appx. at 374–75 (specific request not necessary if a mortgage servicer assigns a single point of contact); *Taylor v. CitiMortgage, Inc.*, No. 17-cv-01231-DAD, 2018 WL 3770532, at *2 (E.D. Cal. Aug. 8, 2018) (borrower

only required to request a foreclosure prevention alternative to trigger § 2923.7); *Jones v. Aegis Wholesale Corp.*, No. 15-cv-01134-JAM, 2015 WL 9260837, at *3 (E.D. Cal. Dec. 18, 2015) (specific request for a single point of contact not required because that would "effectively require borrowers to have knowledge of the intricacies of the Civil Code").

In this district, courts have consistently required plaintiffs to affirmatively request a single point of contact to state a claim under § 2923.7. *See, e.g.*, *Galvez*, 2018 WL 4849676, at *6; *Neal v. Select Portfolio Servicing, Inc.*, No. 15-cv-03212-EJD, 2017 WL 1065284, at *5 (N.D. Cal. Mar. 20, 2017); *but see Green v. Cent. Mortgage Co.*, 148 F. Supp. 3d 852, 873–75 (N.D. Cal. 2015). The Court adopts that interpretation. *See Diamos v. Specialized Loan Servicing LLC*, No. 13-cv-04997-NC, 2014 WL 5810453, at *3 (N.D. Cal. Nov. 7, 2014).

Here, Plaintiffs did not specifically allege that they requested a single point of contact. Even if the Court assumes that Plaintiffs made such a request, § 2923.7(e) permits mortgage servicers to assign a "team of personnel" as the single point of contact. Plaintiffs' complaint is unclear as to whether LaFleur was the single point of contact assigned to their case, or if LaFleur was part of a "team of personnel" making up Plaintiffs' single point of contact. *See* FAC ¶¶ 22, 27 (Wells Fargo representatives "Amber and Katrice . . . confirmed receipt of Plaintiffs' October 24, 2017 fax submission" and "asked for additional documents for review.").

Accordingly, the Court GRANTS Wells Fargo's motion to dismiss Plaintiffs' second and third claim under § 2923.7 with leave to amend.

### C. Unfair Competition Law

The UCL prohibits "unlawful, unfair, or fraudulent business act[s] or practice[s]." Cal. Bus. & Prof. Code § 17200. "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, (1999) (internal citation and quotation marks omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009)

("Each prong of the UCL is a separate and distinct theory of liability.").

The "unlawful" prong of the UCL treats violations of other laws as independently actionable unlawful business practices. *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Business practices are "unfair" if they "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (internal quotation marks and citation omitted). The "fraudulent" prong prohibits business practices that are likely to deceive members of the public. *Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983).

Plaintiffs must also establish standing under the UCL by "(1) establish[ing] a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*, and (2) show[ing] that that economic injury was the result of, i.e., *caused by*, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011) (emphasis in original). The economic injury requirement is satisfied by the threat of foreclosure (*see Foronda v. Wells Fargo Home Mortg. Inc.*, No. 14-cv-03513-LHK, 2014 WL 6706815, at *9 (N.D. Cal. Nov. 26, 2014)) or damage to credit (*see Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1147 (C.D. Cal. 2012)). And "[a] plaintiff fails to satisfy [the] causation requirement if he or she would have suffered 'the same harm whether or not a defendant complied with the law.'" *Turner v. Wells Fargo Bank, N.A. (In re Turner)*, 859 F.3d 1145, 1151 (9th Cir. 2017) (quoting *Daro v. Super. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007)). Thus, courts have found UCL standing lacking when borrowers go into default. *Id.*

Plaintiffs UCL claim is predicated on the "unlawful" and "unfair" prongs. *See* FAC ¶ 77. Because Plaintiffs fail to state a claim under the HBOR, Plaintiffs also fail to state a claim under the UCL. Additionally, Plaintiffs' FAC is unclear as to whether they are in default; if so, they do not have UCL standing. Accordingly, the Court GRANTS Wells Fargo's motion to dismiss Plaintiffs' UCL claim with leave to amend.

9

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

California law implies a covenant of good faith and fair dealing in every contract. *See Chodos v. W. Publ'g Co.*, 292 F.3d 992, 996–97 (9th Cir. 2002) (citing *Carma Developers (Cal.) v. Marathon Dev. Cal.*, 2 Cal. 4th 342, 372–73 (1992)). The elements necessary to establish a breach of the implied covenant of good faith and fair dealing are: "(1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010). In addition, the implied covenant of good faith and fair dealing "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (2004) (internal citation omitted); *see also Pasadena Live v. City of Pasadena*, 114 Cal. App. 4th 1089, 1094 (2004) ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract . . .").

Plaintiffs amended complaint did not provide any details regarding the express terms of their mortgage loan contract with Wells Fargo. Absent these allegations, it is not clear whether Wells Fargo interfered with the specific terms of the contract between the parties. Although California law imposes substantive requirements on Wells Fargo to refrain from dual-tracking, violation of those laws do not automatically give rise to a breach of contract claim. Because Plaintiffs alleged no facts with regards to their contract with Wells Fargo, the Court GRANTS Wells Fargo's motion to dismiss Plaintiffs' breach of the implied covenant of good faith and fair dealing claim with leave to amend.

### IV. Conclusion

The Court GRANTS Wells Fargo's motion to dismiss with leave to amend. Plaintiffs must file their amended complaint by November 30, 2018, or the Court will terminate the case and enter judgment. The amended complaint may not add any claims or

1 | parties without leave of the Court.
2 | **IT IS SO ORDERED.**

Dated: November 5, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge